O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

**VITA-HERB NUTRICEUTICALS INC.,**

**Plaintiff,**

**vs.**

**PROBIOHEALTH LLC, a California limited liability company, and Does 1 through 10,**

**Defendants.**

**Case No.: SACV 11-1463 DOC(MLGx)**

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendant Probiohealth LLC ("Defendant") against Plaintiff Vita-Herb Nutriceuticals Inc. ("Plaintiff"). (Dkt. 19). After considering the moving papers and oral argument, the Court DENIES the Motion as to Plaintiff's First Claim seeking a judicial declaration of joint inventorship of the patent-in-suit, but GRANTS the Motion as to Plaintiff's Second Claim seeking a judicial declaration of ownership of the patent-in-suit.

**I. Background**

This case involves the kinds of nefarious business deals and double-crosses common among the frenemies[1] on the soap opera *Dallas* (although, sadly, none of the romantic intrigue). The gravamen of the Complaint is that Plaintiff's principal, Bing Baksh, is a co-inventor of U.S. Patent No. 7,214,370 ("the '370 Patent") and that Defendant caused Baksh's name to be removed as a co-inventor from the patent application after another co-inventor assigned his interest in the '370 Patent to Defendant.

Unless otherwise stated the following facts are undisputed.[2]

**a. Parties and Other Smooth Operators**

Plaintiff and Defendant are California corporations. Compl. ¶ 1; Answer ¶ 2. Plaintiff's CEO and founder is Bing Baksh ("Baksh"). Pl. Responses (Dkt. 25) ¶ 30. Defendant's CEO is Yoshiteru Koide ("Koide"). *Id.* at ¶ 32; Koide Decl. (Dkt. 23) ¶ 1.

Dr. A. Satyanarayan Naidu ("Co-Inventor Naidu") and Baksh are listed as inventors on the '370 Patent's original provisional application. Pl. Responses (Dkt. 25) ¶ 3. Co-Inventor Naidu assigned his interest in the '370 Patent to Defendant. *Id.* at 8.

Louis Cullman ("Attorney Cullman") is an attorney who has either personally represented or who contracted to have his firm represent Defendant, Plaintiff, Baksh, Koide, and Co-Inventor Naidu regarding the '370 Patent and other patents—including representing the parties at the same time and regarding the same '370 Patent. *See id.* at ¶ 40 (December 18, 2000, Attorney Cullman acting as Koide's patent attorney); *id.* at ¶¶ 46, 50-51 (September 26, 2002, and September 26, 2003, Attorney Cullman acting as Koide's patent attorney files '370 Patent Application listing Baksh as a co-inventor); *id.* at ¶57, Baksh Decl. Ex. 28 (Dkt. 27-4)

---

[1] "Frenemy" is a portmanteau of "friend" and "enemy" that can refer to either an enemy disguised as a friend or someone who is both a friend and a rival. *See* http://en.wikipedia.org/wiki/Frenemy.

[2] Defendant filed no reply to Plaintiff's Responses and Objections to Defendant's Statement of Uncontroverted Facts (Dkt. 25) ("Pl. Responses"). Thus, Defendant is deemed to have conceded the additional facts in this document for which Plaintiff provided evidence.

(July 1, 2004, Attorney Cullman requests time extension from USPTO on behalf of "Applicant: Naidu et al."); Pl. Responses (Dkt. 25) ¶ 60 (August 31, 2005, contract in which Attorney Cullman states that his firm is engaged to represent Plaintiff and Baksh "in connection with general intellectual property matters"); *id.* at ¶ 61 (October 20, 2005, Attorney Cullman bills Baksh for "US divisional application"); *id.* at ¶ 62 (December 19, 2005, Attorney Cullman bills Baksh to "prepare preliminary amendment in parent application to cancel claims of divisional application"); *id.* at ¶ 19 (March 16, 2007, Attorney Cullman acting solely as Defendant's patent attorney).

Michelle Glasky ("Glasky") is a patent agent who submitted various filings regarding the '370 Patent to the USPTO, including the request to have Baksh removed as an inventor of the '370 Patent.

**b. Attorney Cullman files '370 Patent Application listing both Baksh and Co-Inventor Naidu as inventors**

On September 26, 2002, Attorney Cullman, who at that point was Koide's patent attorney, filed the '370 Patent's original provisional application listing Baksh as a co-inventor. Pl. Responses (Dkt. 25) ¶¶ 46, 50-51, 57 (September 26, 2003, filings); *see also* Baksh Decl. Ex. 28 (Dkt. 27-4) (July 1, 2004, Attorney Cullman requests time extension from USPTO on behalf of "Applicant: Naidu et al.").[3]

**c. Koide convinces Baksh to hire Attorney Cullman for IP work**

Koide persuaded Plaintiff and Baksh to engage Attorney Cullman to handle the divisional for his NPIB claims. Pl. Responses (Dkt. 25) ¶ 60. On August 31, 2005, Baksh signed a document titled "Engagement Letter Agreement" submitted to him by Attorney Cullman. Pl. Responses (Dkt. 25) ¶ 60; Baksh Decl. Ex. 30 (Dkt. 28-2). The Engagement Letter Agreement states that Plaintiff and Baksh were engaging Attorney Cullman's firm, Preston Gates, "in connection with general intellectual property matters." Pl. Responses (Dkt. 25) ¶ 60; Baksh

[3] The parties dispute whether Cullman was also acting on Baksh's behalf by filing the '370 Patent application. The Court need not resolve that dispute for purposes of the present Motion.

Decl. Ex. 30 (Dkt. 28-2) at 1. According to the Engagement Letter Agreement, "based upon the information that [we] have provided," Preston Gates "located no present conflicts of interest." Pl. Responses (Dkt. 25) ¶ 60; Baksh Decl. Ex. 30 (Dkt. 28-2) at 1.

On October 20, 2005, Attorney Cullman billed Baksh for "US divisional application" work done by Glasky. P's Pl. Responses (Dkt. 25) ¶ 61. On December 19, 2005, Attorney Cullman billed Baksh for Glasky's work "prepar[ing] preliminary amendment in parent application to cancel claims of divisional application." *id.* at ¶ 62.

**d. December 1, 2005: Attorney Cullman's firm, at Defendant's direction, asks USPTO to remove Baksh as an inventor from the '370 Patent**

On December 1, 2005, while Attorney Cullman's firm was representing *both* Plaintiff and Defendant, the firm, at Defendant's direction, asked the USPTO to cancel certain claims and remove Plaintiff's CEO, Baksh, as an inventor from the '370 Patent Application.[4] *See* Pl. Responses ¶ 11, Koide Decl. Ex. 2 (Dkt. 19-4) (December 1, 2005, letter to the USPTO on behalf of "Applicant: Naidu et al." that states "Applicant hereby cancels claims 5, 7, and 14-22. As a result of this amendment, A.S. Naidu is the sole inventor of pending claims 1-4, 6, 8-13 and 23. Therefore, Applicant hereby requests that inventorship be amended under 37 CFR § 1.48(b) and Bing Baksh deleted as an inventor on the instant application."); Baksh Decl. Ex. 31 (Dkt. 28-3) at 1 (December 1, 2005, letter to the USPTO on behalf of "Applicant: A. Satyanarayan Naidu" that states "Applicant respectfully requests that the enclosed filing receipt be corrected to remove Bing Baksh as inventor.").

Additional evidence that this action was taken by Attorney Cullman's firm is that the return address for the December 1, 2005, letter is the same firm office as that listed on the August 31, 2005, contract in which Attorney Cullman states that his firm is engaged to represent Plaintiff and Baksh in "in connection with general intellectual property matters." *Compare id.*

---

[4] While Plaintiff purports to dispute this fact, Plaintiff's dispute is not genuine because Plaintiff's own evidence confirms this fact and Plaintiff only objects to Defendant's failure to mention that Attorney Cullman's firm was also representing Plaintiff as of December 1, 2005.

*with* Baksh Decl. Ex. 30 (Dkt. 28-2) (containing addresses 1900 Main Street, Suite 600, Irvine, CA, 92614).

**e. Koide and Co-Inventor Naidu have a falling out**

At some point prior to January 30, 2006, Koide and Co-Inventor Naidu had a falling out which was resolved through a written Separation Agreement on that date. Pl. Responses ¶ 68. Baksh was not a party to this Separation Agreement. *Id.*

**f. Baksh and Co-Inventor Naidu have a falling out**

At some point prior to June 12, 2006, Baksh and Co-Inventor Naidu also had a falling out. Koide Decl. Ex. 4 (Dkt. 19-6).

**g. June 1, 2006: Plaintiff and Baksh sign the General Release contract with Defendant to obtain information helpful to Baksh's dispute with Co-Inventor Naidu**

On June 12, 2006, the Baksh on behalf of Plaintiff and Koide on behalf of Defendant signed a General Release contract ("General Release"). Pl. Responses (Dkt. 25) ¶ 16; Koide Decl. Ex. 4 (Dkt. 19-6). The three-page General Release states that Plaintiff and Baksh "forever release . . . [Defendant and Koide] . . . from any and all claims . . . which [Plaintiff and Baksh] have or may claim to have, known or unknown, against [Defendant and Koide] from the beginning of time to the date of this Release." Koide Decl. Ex. 4 (Dkt. 19-6). The General Release also states that Plaintiff and Baksh "expressly waive the benefit and protection of California Civil Code Section 1542," and then quotes the language of that code section, which states "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." *Id.* (quoting Cal. Civ. Code § 1542).

The General Release states that it is being entered into "in consideration of," among other things, the fact that Plaintiff and Baksh "have a pending dispute (the 'Dispute') with Dr. A.S. Narain Naidu" and Defendant and Koide "have information relevant to the Dispute and are willing to provide truthful information" to Plaintiff and Baksh. *Id.*

**h. March 7, 2007: Baksh discovers that he was omitted from the '370 Patent**

On March 7, 2007, Baksh discovered that he had been removed from the '370 Patent's Application. Baksh Decl. (Dkt. 26) ¶ 55. Baksh's assertion is supported by his March 7, 2007, email to Plaintiff's new attorney, Schewe, in which Baksh stated "To the best of my knowledge, this is the first indication I have that I was removed from the original patent application" of the '370 Patent. Pl. Responses (Dkt. 25) ¶ 80; Baksh Decl. Ex. 41 (Dkt. 29-1).

**i. March 8, 2007: '370 Patent issues with Baksh omitted as an inventor**

On May 8, 2007, the claims remaining in the '370 Patent revised application issued as U.S. Patent No. 7,214,370 ("the '370 Patent") with Baksh omitted as an inventor. Pl. Responses (Dkt. 25) ¶ 15; Koide Decl. Ex. 3.

On March 9, 2007, the USPTO mailed out its "Corrected Filing Receipt," which "acknowledged" receipt of the application that requested removal of Baksh as an inventor. Baksh Decl. (Dkt. 26) ¶ 56; Baksh Decl. Ex. 42 (Dkt. 26) ¶ 55.

**j. Baksh contacts Defendants asserting co-inventorship of the '370 Patent**

On March 16, 2007, Plaintiff's new attorney, Schewe, sent a faxed letter to Attorney Cullman, who at this point was acting solely as Defendant's patent attorney. *id.* at ¶ 19. That letter states that "Mr. Baksh was deleted as one of the named inventors on the asserted grounds that Mr. Baksh's inventions were no longer being claimed" and that "Mr. Baksh recently reviewed this claim [in the '370 Patent] . . . and determined that he should be a named inventor based on the subject matter." Baksh Decl. ¶ 58, Ex. 44.

**k. Baksh emails Defendant regarding KE99**

On April 21, 2009, Baksh stated in an email to Koide that Plaintiff and Baksh "have absolutely no interest or intention in making any claims to KE 99 or any composition containing KE 99, now or at any time in the future." *See* Koide Decl. Ex. 6; Pl. Responses (Dkt. 25) ¶ 23.

**l. Baksh litigates his inventorship status in Canada against Defendants**

At some point, the parties' personalities became too large to be contained within the United States and so the parties began a dispute in Canada regarding a patent ("Canadian Patent") related to the '370 Patent. Defendant filed the Canadian Patent application which

originally named both Co-Inventor Naidu and Baksh as inventors. Pl. Responses (Dkt. 25) ¶ 85. On June 6, 2006, Baksh refused to sign an affidavit presented to him by Glasky which stated that Baksh was not involved in inventing the Canadian Patent. *Id.* at ¶ 69. On July 27, 2009, Defendant made its first request in Canada to have Baksh removed as an inventor in the Canadian Patent application. *Id.* at ¶ 88. On June 16, 2010, after Baksh commenced legal proceedings in Canada, the Commissioner of Patents restored Baksh as an inventor of the Canadian Patent application. *Id.* at ¶ 90. On September 30, 2010, Defendant again requested the Commissioner to remove Baksh as an inventor on the Canadian Patent application and the request was once again granted. *Id.* at ¶ 91-92. Baksh is currently litigating in Canada to have his inventorship status restored to the Canadian Patent application. *Id.* at ¶ 93.

**m. Baksh files the present complaint**

On September 22, 2011, Plaintiff commenced the present action against Defendant. *See* Compl. (Dkt. 1). Plaintiff's First Claim seeks a judicial declaration that Baksh is "joint inventor of" the '370 Patent. *Id.* at 6, 8. Plaintiff's Second Claim seeks a judicial declaration that Plaintiff is an owner of the '370 Patent because Baksh assigned his interest to Plaintiff. *Id.* at 7, 8.

**n. This Court reinstates Defendant's Motion for Summary Judgment on the understanding that hearing the Motion early will not require the Court to interpret the '370 Patent**

On May 7, 2012, this Court struck the present Motion for Summary Judgment, explaining that the "Court is not inclined to consider piecemeal summary judgment motions over the next 10 months" and instructing Defendant to "refile its motion closer to the Motion Cut-Off date." Order (Dkt. 32). Defendant responded by filing a motion to have the present Motion for Summary Judgment heard early in the litigation and asserted that, by doing so, "[t]he Court will avoid the burden of analyzing the complexities of Patent Law . . . . [and] will not be required to evaluate and understand the technology of the patent at issue." *See* Reply In Support of First Motion to Amend Scheduling Order (Dkt. 37) at 1. Defendant also asserted that "this Court's analysis of the summary judgment motion will be limited to basic contract law principles

relating to releases" and thus "the complexities of Patent Law will not have to be addressed." Motion to Amend Scheduling Order (Dkt. 35) at 1.

The Court granted Defendant the opportunity to have this Motion for Summary Judgment heard early in this litigation based on Defendant's representation. At oral argument, the Court also granted Defendant's request to file supplemental briefing regarding the interpretation of the General Release.

**II. Legal Standard**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers

and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

## III. Discussion

Defendant argues that it is entitled to summary judgment because Plaintiff's First and Second Claims are barred by either: (1) a General Release signed by Plaintiff and Defendant; or (2) the defenses of equitably estoppel or laches.

### a. Defendant's General Release defense

Defendant contends that the General Release releases Plaintiff's First and Second Claims because Defendant's actions that gave rise to those claims occurred on December 1, 2005, roughly six months before Plaintiff signed the General Release on June 12, 2006. Defendant first contends that General Release should be interpreted as releasing claims that arose *after* the General Release was signed but which are "based upon acts that occurred prior to the date" the General Release was signed. Defs. Supplemental Mem. (Dkt. 41) at 2. Defendant alternatively contends that, even if the General Release releases only those claims that Plaintiff *had as of* the date the General Release was signed, Plaintiff had its Second Claim by that date.

#### i. The General Release encompasses only claims that Plaintiff "had" at the time the General Release was signed

For several decades, California courts have exhibits a "strong and growing distaste . . . for exculpatory release provisions releasing a tortfeasor from liability for his or her future negligence or misconduct." *Ferrell v. S. Nevada Off-Rd. Enthusiasts, Ltd.*, 147 Cal. App. 3d 309, 314 (Ct. App. 1983).[5] Under California law, "[t]o be valid and enforceable, a written release exculpating a tortfeasor from liability for future negligence or misconduct must be clear,

---

[5]This Court applies California contract law in interpreting the General Release. *See Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008).

unambiguous and explicit in expressing the intent of the parties." *Baker Pac. Corp. v. Suttles*, 220 Cal. App. 3d 1148, 1153 (1990) (noting that releases that waive liability for future intentional torts are generally void as a matter of public policy under Cal. Civ. Code §1668); *cf Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1348 (Fed. Cir. 2008) (noting under New Jersey law that "releases generally are construed not to release future claims").

The General Release here releases only those claims that Plaintiff *had*—that is, claims already in existence—as of the date the Plaintiff signed the General Release: June 12, 2006. Specifically, the General Release states that Plaintiff and Baksh "forever release . . . [Defendant and Koide] . . . from any and all claims . . . which [Plaintiff and Baksh] *have* or may claim to have, known or unknown, against [Defendant and Koide] from the beginning of time *to the date of this Release*." Koide Decl. Ex. 4 (Dkt. 19-6) (emphasis added). The phrase "from the beginning of time to the date of this Release" modifies the phrase "have or may claim to have" and thus indicates the time period during which the released *claims* must have *existed*.

Defendant contends that the General Release releases claims that arose after the General Release was signed but which are based upon acts that occurred before the General Release was signed, relying on a Federal Circuit case applying Minnesota law. *See Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1371 (Fed. Cir. 1999). In *Augustine*, the release stated that the parties "release and forever discharge [released party] from any and all manner of action or actions . . . that [releasing party] . . . have, have had, or may have against [released party] *upon or by reason of or relating to any acts*, omissions or statements made by [released party] on or before the date of this Settlement Agreement." *Id.* (emphasis added). The Court reasoned that the phrase "may have" was "prospective in nature," and "therefore the release barred future claims that would arise after the date of the Settlement Agreement, as long as the claims were *related to acts that were taken on or before* the date of the Settlement Agreement." *Id.* (emphasis added).

The present case is distinguishable from *Augustine* because there the release indicated a time period for when the acts relating to the released claims must have occurred, whereas here

the release indicates a time period for when the released claims must have existed. In *Augustine*, the phrase "on or before the date of this Settlement Agreement" modified the phrase "acts, omissions or statements," and thus indicated a time period during which the *acts, omissions or statements* relating to the released claims must have *occurred*. *Id.* Here, in contrast, the phrase "from the beginning of time to the date of this Release" modifies the phrase "have or may claim to have" and thus indicates the time period during which the released *claims* must have *existed*. The General Release here makes no reference to when acts relating to the released claims must have occurred.[6]

Indeed, California courts have construed releases with broader language than that at issue here—that is, releases that lack any time period for when the claim must have existed—and nonetheless held that these releases failed to waive future claims. *See Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 572, 591 (2010) (holding that release "did not . . . waive future claims" where release stated plaintiffs "release and forever discharge [defendants] from any and all claims . . . of any kind, whether known or unknown, which have been or could have been asserted against defendants"). Similarly, federal courts applying California law have construed releases with broader language than that at issue here as nonetheless failing to waive future claims where, as here, the release references a waiver of California Civil Code Section 1542. *See Ball v. Johanns*, CIV S-07-1190 LKKDAD, 2007 WL 3124962, *4-5 (E.D. Cal. Oct. 24, 2007) (holding that agreement released only the "claims that existed at the time of the agreement" because this "construction is supported by" the agreement's waiver of rights under

---

[6] Defendant's other cases are similarly distinguishable because they impose a time period for when the acts relating to the claims must have occurred, not a time period for when the claims themselves must have existed. *Marder v. Lopez*, 450 F.3d 445, 454 (9th Cir. 2006) (interpreting agreement that stated the plaintiff "releases and discharges [defendants] from each and every claim . . . heretofore or hereafter arising out of or in any way connected with, either directly or indirectly, any and all arrangements . . . in connection with the preparation of screenplay material [and other acts]").

California Civil Code section 1542, which "relates only to those claims that 'exist . . . at the time of executing the release'").

Thus, the Court rejects Defendant's interpretation of the General Release and instead interprets the General Release to release only those claims that Plaintiff *had*—that is, claims already in existence—as of the date the Plaintiff signed the General Release: June 12, 2006.

**ii. The General Release did not release Plaintiff's First Claim for joint inventorship because Plaintiff did not "have" that claim at the time Plaintiff signed the General Release**

As Plaintiff correctly argues, Plaintiff's First Claim did not arise until the '370 Patent issued on March 8, 2007—well after the General Release was signed. *See* Pl. Responses (Dkt. 25) ¶ 15; Koide Decl. Ex. 3.

The statute which is the basis of Plaintiff's First Claim for a declaration of joint inventorship provides for a cause of action only *after* the patent-in-suit has *issued*. The Complaint states that "[t]his is an action arising under the patent laws of the United States, specifically 35 U.S.C. §256." Compl. ¶ 3. That statute provides in relevant part that "[w]henever . . . through error an inventor is not named in an issued patent," a "court . . . may order correction of the patent on notice and hearing of all parties concerned." 35 U.S.C. § 256. It is well-established that this statute provides a cause of action only after the patent-in-suit has issued. *HIF Bio, Inc. v. Yung Shin Pharmaceuticals Indus. Co., Ltd.*, 600 F.3d 1347, 1353 (Fed. Cir. 2010), *as amended on reh'g in part* (June 14, 2010) (holding that district court erred in failing to dismiss claim "because this dispute involves *pending* patent applications, the plaintiffs' requested relief—a declaration of the 'true' inventor—is tantamount to a request for . . . a modification of inventorship on pending patent applications" and such "requested relief can only be granted by the Director of the United States Patent and Trademark Office," not the courts); *E.I. Du Pont de Nemours & Co. v. Okuley*, 344 F.3d 578, 584 (6th Cir. 2003) (affirming district court's dismissal of claim under Section 256 because "the district court lacked jurisdiction to review the inventorship of an unissued patent"); *Sagoma Plastics, Inc. v. Gelardi*, 366 F.Supp.2d 185, 188 (D.Me.2005) ("Congress' clear delegation of power to the courts in [35

U.S.C.] § 256 to correct issued patents . . . indicates a conscious choice to bar the courts from correcting errors regarding inventorship until after the patent has issued."); *Carter v. ALK Holdings, Inc.*, 510 F. Supp. 2d 1299, 1304 (N.D. Ga. 2007) (explaining that "[t]his construction is supported not only by the text of the statutes but also by common sense. If the PTO determines that the invention claimed in the application is not patentable, or that the portions claimed by the putative inventor are not patentable, a long and costly litigation in district court over inventorship would be futile as well as wasteful.") *aff'd in part, rev'd in part on other grounds* 605 F.3d 1319 (Fed. Cir. 2010); 5 Annotated Patent Digest § 37:104 ("[D]eclaratory judgment action to request modification of the named inventors for a pending patent application is improper as a district court may only order correction of inventorship for an issued patent under § 256").

In sum, the claim that Plaintiff brings under 35 U.S.C. §256 could not have existed until the '370 Patent issued on March 8, 2007. Because Plaintiff's claim did not exist until March 8, 2007, Plaintiff did not *have* the claim on June 12, 2006, when Plaintiff signed the General Release. Because the General Release only released Defendants of claims that Plaintiff *had* on June 12, 2006, the General Release does not bar the First Claim.

Accordingly, the Court DENIES Defendant's Motion WITH PREJUDICE as to Plaintiff's First Claim to the extent the Motion is based on a defense arising from the General Release.

**iii. The General Release does release Plaintiff's Second Claim for a declaration of ownership**

Plaintiff's Second Claim seeks a judicial declaration that Plaintiff is an owner of the '370 Patent because Baksh assigned his interest to Plaintiff. Compl. at 7. As Defendant observed at oral argument and in its supplemental briefs, Plaintiff had this Second Claim at the time it signed the General Release. Contrary to Plaintiff's argument, the fact that Plaintiff's First Claim for joint inventorship did not yet exist at the time the General Release was signed says nothing about whether Plaintiff's Second Claim of ownership existed by that time. This is because:

> It is elementary that inventorship and ownership are separate issues. An application for a patent must be made by or on behalf of the actual inventor or inventors of the subject matter claimed therein. 35 U.S.C. §§ 111, 115-118. Thus, inventorship is a question of who actually invented the subject matter claimed in a patent. Ownership, however, is a question of who owns legal title to the subject matter claimed in a patent, patents having the attributes of personal property. 35 U.S.C. § 261.

*Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993) (citation omitted).

Plaintiff had a claim for ownership as of the date the General Release was signed because nothing precluded Plaintiff from seeking declaratory relief at that time to determine "who owns legal title to the subject matter claimed in a patent." *Id*. Because Plaintiff had its Second Claim at the time the General Release was signed, the Court GRANTS Defendant's Motion as to Plaintiff's Second Claim.

**iv. Conclusion**

In sum, the Court DENIES Defendant's Motion WITH PREJUDICE as to Plaintiff's First Claim to the extent the Motion is based on a defense arising from the General Release. The Court GRANTS the Motion as to Plaintiff's Second Claim.

**b. The Court declines to consider Defendant's equitable estoppel and laches defenses because they require interpretation of the '370 Patent and its relationship to other patents**

Defendant alternatively argues that either equitably estoppel or laches bars Plaintiff from bringing the present claim because, among other things, an April 21, 2009, email shows that Plaintiff abandoned his interest in the '370 Patent.

"Laches is an equitable defense that may bar an inventorship claim." *Serdarevic v. Advanced Medical Optics, Inc.*, 532 F.3d 1352, 1358 (Fed. Cir. 2008). A defense of laches requires defendant to show: (1) unreasonable and unexcused delay in bringing the claim; and (2) material prejudice to the defendant as a result of the delay. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed.Cir.1992) (en banc); *Pannu v. Iolab Corp.*, 96 F. Supp.

2d 1359, 1368 (S.D. Fla. 2000) (applying defense to claim of inventorship); Cal. Prac. Guide Civ. Pro. Before Tr. Stat. of Limitations Ch. 1-A ¶ 1:45 ("Under federal law, laches is an equitable defense available for actions that do not have a specific applicable statute of limitations and are based on statutes enacted before the federal 'catchall' statute (28 USC § 1658(a)) became effective (12/1/90)." Laches and equitable estoppel are defenses addressed to the sound discretion of the trial court. *A.C. Aukerman Co.*, 960 F.2d at 1041.

A defense of equitable estoppel against a claim of joint inventorship requires defendant to show: (1) the plaintiff has led the defendant to reasonably infer that the plaintiff does not intend to enforce the plaintiff's claim due to the plaintiff's misleading "conduct," such as specific statements, action, inaction; (2) the defendant relies upon that conduct; and (3) due to the defendant's reliance, the defendant will be materially prejudiced if the plaintiff is allowed to proceed with her claim. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1029 (Fed.Cir.1992) (en banc) (announcing equitable estoppel rule in context of patent infringement claim); *Pannu v. Iolab Corp.*, 96 F. Supp. 2d 1359, 1368 (S.D. Fla. 2000) (applying *A.C. Aukerman Company* rule to claim of inventorship).[7] A plaintiff's silence *alone* is not misleading conduct sufficient to bar a claim of inventorship under equitably estoppel even where, as here, the plaintiff waited more than four years after discovering her omission from the

---

[7] As Plaintiff notes and Defendant concedes, *A.C. Aukerman Company* overruled the old rule requiring "unreasonable and inexcusable delay in filing suit" as an additional element of equitable estoppel. *See MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568, 1571 (Fed. Cir. 1989) (announcing old rule); *Rhone-Poulenc Agro, S.A. v. Monsanto Co.*, 445 F. Supp. 2d 531, 563 n.40 (M.D.N.C. 2006) ("*Aukerman* 'expressly overruled' the equitable estoppel elements used in . . . *MCV*. . . . [T]he *Aukerman* test has been used by several courts to evaluate an equitable estoppel claim in the context of a claim of joint inventorship."); *see also Pannu,* 96 F.Supp.2d at 1368; *Ellison Educ. Equip., Inc. v. Chen,* 2004 WL 3154592, at *5 (C.D.Cal. Dec.21, 2004); *Williams Serv. Group, Inc. v. O.B. Cannon & Son, Inc.,* 1994 WL 13850, at *4 (E.D.Pa. Jan.19, 1994).

patent. *Ellison Educ. Equip., Inc. v. Chen*, SACV02-1184-JVS(ANX), 2004 WL 3154592, *6 (C.D. Cal. Dec. 21, 2004) (holding that alleged co-inventor was not equitably estopped from seeking declaration of co-inventorship where patent owner only showed that alleged co-inventor's "silence caused [patent owner] to make 'substantial investments' in the prosecution of the . . . Patent, as well as in the development and marketing of the machine").

Defendant contends that Plaintiff's misleading conduct for purposes of equitable estoppel and unreasonable delay for purposes of laches is the combination of: (1) Plaintiff's silence regarding the '370 Patent after asserting Baksh's inventorship in the March 16, 2007, email from Plaintiff's new attorney, Schewe, to Defendant's attorney[8]; and (2) an April 21, 2009, email by Baksh to Koide stating that Plaintiff and Baksh "have absolutely no interest or intention in making any claims to KE 99 or any composition containing KE 99, now or at any time in the future." *See* Koide Decl. Ex. 6; Pl. Responses (Dkt. 25) ¶ 23.

The Court declines to rule on Defendant's equitable estoppel and laches defenses at this stage in the litigation because Defendant's argument requires the Court to construe the terms and scope of the '370 Patent without sufficient input from the parties. The Court granted Defendant the opportunity to move for summary judgment early in this litigation based on Defendant's representation that, in hearing this Motion early in the litigation, "[t]he Court will avoid the burden of analyzing the complexities of Patent Law . . . . [and] will not be required to evaluate and understand the technology of the patent at issue." *See* Reply In Support of First Motion to Amend Scheduling Order (Dkt. 37) at 1. Defendant's argument requires this Court to construe whether the '370 Patent covers the material described in Baksh's email, namely, "any composition containing KE 99." Thus, this Court will have to evaluate and understand the technology of the patent at issue, which this Court has already indicated it wishes to do at a later point in this litigation.

---

[8] Amusingly, Defendant's counsel was Attorney Cullman, who by March 16, 2007, was no longer representing Plaintiff or Baksh.

Accordingly, the Court DENIES Defendant's Motion WITHOUT PREJUDICE to the extent it is based on equitable estoppel or laches defenses. Defendant may raise these arguments at the later date for all summary judgment motions to be heard.

**c. Attorneys fees requested by both sides**

The Court declines to award either side attorneys fees. While the parties politely but firmly assert that each other's arguments are frivolous and vexatious, the Court has been pleasantly surprised that the briefs by both sides regarding this Motion are clear, concise, and supported with authority.

**IV. Disposition**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment. Specifically, the Court GRANTS the Motion as to Plaintiff's Second Claim.

The Court DENIES Defendant's Motion as to the First Claim:

1) WITH PREJUDICE to the extent the Motion is based on a defense arising from the General Release.

2) WITHOUT PREJUDICE to the extent the Motion is based on equitable estoppel or laches defenses. Defendant may raise these arguments at the later date for all summary judgment motions to be heard.

DATED: September 6, 2012

David O. Carter

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE