O   JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| VITA-HERB NUTRICEUTICALS, INC., a California Corporation,<br>    Plaintiff,<br>vs.<br><br>PROBIOHEALTH, LLC, a California limited liability company, and Does 1 through 10,<br>    Defendants. | Case No.: SACV 11-1463 DOC(MLGx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

    Before the Court are three motions: 1) a Motion for Judgment on the Pleadings (Dkt. 52) filed by Defendant Probiohealth, LLC ("Defendant"); 2) Defendant's Motion for Summary Judgment on Plaintiff's remaining claim (Dkt. 53); and 3) a Motion for Summary Judgment

(Dkt. 49) filed by Plaintiff Vita-Herb Nutriceuticals, Inc. ("Plaintiff").  Oral arguments were heard by the Court on March 4, 2013.  After considering all moving papers and oral arguments, the Court GRANTS Defendant's Motion for Judgment on the Pleadings and, because that holding is based on a determination that this Court no longer has subject matter jurisdiction to adjudicate Plaintiff's claim, the Court accordingly denies the parties' respective motions for summary judgment as moot.

## I.     Background

The gravamen of Plaintiff's Complaint is that Plaintiff's principal, Bing Baksh, is a co-inventor of U.S. Patent No. 7,214,370 ("the '370 Patent") and that Defendant caused Baksh's name to be removed as a co-inventor from the patent application after another co-inventor assigned his interest in the '370 Patent to Defendant.  Plaintiff brought two claims, the First Claim seeking a judicial declaration that Bing Baksh is "joint inventor of" the '370 Patent, the Second Claim seeking a judicial declaration that Plaintiff Vita-Herb Nutriceuticals is an owner of the '370 Patent because Baksh assigned his interest to Plaintiff.  *See* Compl. (Dkt. 1) at 6-8.

### a.     Defendant's Previous Motion for Summary Judgment

On April 23, 2012, Defendant filed its first Motion for Summary Judgment (Dkt. 19), arguing that a General Release signed on June 12, 2006, barred Plaintiff's claims.  After a hearing and additional briefing, on September 6, 2012, the Court denied in part and granted in part Defendant's Motion for Summary Judgment, granting summary judgment in favor of Defendant only as to Plaintiff's Second Claim for ownership.  *See* Order (Dkt. 33) at 13-14.

In its Order, the Court held that the key question regarding whether or not the General Release barred Plaintiff's claims was whether or not those claims existed at the time the General Release was signed.  *See* Order at 12 (interpreting "the General Release to release only those claims that Plaintiff *had*–that is, claims already in existence–as of the date the Plaintiff signed the General Release").  The Court went on to find that the General Release did not bar Plaintiff's First Claim for a declaration of Baksh's joint inventorship because, as a matter of law, that claim "did not arise until the '370 Patent issued on March 8, 2007–well after the General Release was signed." *Id.*

However, the Court held that the General Release *did* bar Plaintiff's Second Claim for a declaration that Plaintiff Vita-Herb Nutriceuticals was an owner of the '370 Patent, because this claim for ownership existed at the time of the signing of the General Release on June 12, 2006. *See* Order at 13-14.  The Court found that, in contrast to Plaintiff's First Claim for Inventorship, here "nothing precluded Plaintiff from seeking declaratory relief" at the time of the signing "to determine 'who owns legal title to the subject matter claimed in a patent.'" *Id.* at 14 (quoting *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993)).

Plaintiff filed a Motion for Reconsideration (Dkt. 45) on October 2, 2012, which was denied by the Court on January 23, 2013.  *See* Minute Order (Dkt. 68).

### b. Defendant's Motion for Judgment on the Pleadings, and the Parties' Motions for Summary Judgment

In light of the Court's determination that Plaintiff's only remaining claim is one for correction of inventorship pursuant to 35 U.S.C. § 256, Defendant now moves for judgment on the pleadings.  Defendant argues that Plaintiff lacks the standing required to confer subject matter jurisdiction on this Court.  *See* Def's Mot. (Dkt. 52) at 1.  Because this motion, which was filed concurrently with Defendant's Second Motion for Summary Judgment (Dkt. 53) and Plaintiff's Motion for Summary Judgment (Dkt. 49), involves the threshold issue of jurisdiction, the Court considers jurisdiction before turning to the parties' respective motions for summary judgment.

## II.   Defendant's Motion for Judgment on the Pleadings

### a. Legal Standard

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  If a party raises an issue as to the court's subject matter jurisdiction on a motion for a judgment on the pleadings, "the district judge will treat the motion as if it had been brought under Rule 12(b)(1)." *San Luis Unit Food Producers v. United States*, 772 F. Supp. 2d 1210, 1218 (E.D. Cal. 2011) *aff'd*, 2013 WL 765206 (9th Cir. Mar. 1, 2013) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and

Procedure § 1367 (3d ed. 2004)); *see also Rutenschroer v. Starr Seigle Comm'n, Inc.,* 484 F.Supp.2d 1144, 1147–48 (D. Haw. 2006).

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the court lacks subject matter jurisdiction to adjudicate the claims. Once subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "the party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists"). Accordingly, the court will presume lack of subject matter jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

In evaluating a Rule 12(b)(1) motion, the question of whether the court must accept the complaint's allegations as true turns on whether the challenge is facial or factual. A facial attack is one in which subject matter jurisdiction is challenged solely on the allegations in the complaint, attached documents, and judicially noticed facts. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the moving party asserts that the lack of federal subject matter jurisdiction appears on the "face of the pleadings." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In the case of a facial attack, the court is required to accept as true all factual allegations set forth in the complaint. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005).

In contrast, a factual attack (or a "speaking motion") is one in which subject matter jurisdiction is challenged as a matter of fact, and the challenger "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In assessing the validity of a factual attack, the court is not required to presume the truth of the plaintiff's factual allegations. *Id.* Rather, the court evaluates the allegations by reviewing evidence outside of the pleadings. *Id.*

**b. Discussion**

Defendant asserts that it is entitled to judgment on the pleadings because Plaintiff, without any claim for ownership of the '370 Patent and without any concrete financial interest in the outcome of its complaint for correction of inventorship, "cannot prove injury, causation and redressability, which are the indispensable requirements for constitutional standing." Def's Mot. at 3.

### i. Subject matter jurisdiction is dependant on Plaintiff's standing to sue.

The statute on which Plaintiff's claim is based, 35 U.S.C. § 256, establishes a cause of action for correction of a patent's named inventors:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.
>
> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256. However, a plaintiff suing for correction of inventorship under § 256 can pursue that claim in federal court "only if the requirements for constitutional standing—namely injury, causation, and redressability—are satisfied." *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1326 (Fed. Cir. 2009). Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Id.* at 1325 (citing *Warth v. Seldin,* 422 U.S. 490, 498 (1975)).

### ii. Lack of ownership and a lack of any financial or reputational interest in a patent deprive a party of standing to sue for co-inventorship.

If a plaintiff lacks an ownership interest in a patent, and that plaintiff will not receive any other financial or personal rewards from a declaration of inventorship, that plaintiff does not have standing to sue under Section 256. *See Larson,* 569 F.3d at 1326-28; *see also Am. Nav. Sys., Inc. v. Michalson*, 2011 WL 5330533 (D. Mass. Nov. 4, 2011) (citing *Larson* for the same rule). In *Larson*, the designer of a piece of nautical equipment had assigned away title to the design's patent to his employer, Correct Craft, Inc., and later sought to correct inventorship pursuant to Section 256. *Larson*, 569 F.3d at 1322. The court held that, "[b]ecause Larson lacks an ownership interest, and because being declared the sole inventor will not generate any other direct financial rewards . . . Larson has no constitutional standing to sue for correction of inventorship in federal court." *Id.* at 1327.

The court in *Larson* discussed and distinguished another case regarding Section 256 and the elements of constitutional standing: *Chou v. University of Chicago. Larson*, 569 F.3d at 1322 (citing *Chou*, 254 F.3d 1347, 1358 (Fed.Cir.2001)). The plaintiff in that case, a research scientist at the University of Chicago, alleged that her name had been incorrectly omitted from several patents. *Chou*, 254 F.3d at 1353-54. While Chou had assigned title to her inventions to the university, she sought correction of inventorship because, if identified as an inventor, she would be entitled under university policy to royalties, licensing revenue, and other financial benefits. *Id.* at 1355. In that case, Chou's "concrete financial interest" in the patents, as per university policy, was "enough to satisfy the three requirements for standing under Article III." *Id.* at 1359.

By contrast, because the plaintiff in *Larson* stood "to reap no benefit from a preexisting licensing or royalties arrangement . . . Larson ha[d] no financial interest in the patents sufficient for him to have standing to pursue a § 256 claim." *Larson*, 569 F.3d at 1326-27; *see also Jim Arnold Corp. v. Hydrotech Systems, Inc.,* 109 F.3d 1567, 1571-72 (Fed.Cir.1997) (finding that a plaintiff who had assigned away all his patent rights lacked standing to pursue an infringement

claim because, "absent judicial intervention to change the situation," he did not have an ownership interest in the patents). Because Larson's financial stake in the patents was "contingent on him obtaining relief that a federal court has no jurisdiction under § 1338 to provide," the court lacked subject matter jurisdiction to consider his claim. *Id.*

The court in *Larson* left open one question considered in *Chou*, namely, "whether a purely reputational interest is sufficient to confer standing for a § 256 claim," because Larson claimed no reputational injury. *See Larson*, 569 F.3d at 1328. Here, Plaintiff concedes that "Vita-Herb does not seek monetary or reputational damages for Baksh or itself, and does not seek an injunction," Pl's Opp'n (Dkt. 66) at 1, so the Court need not consider the question of standing based on reputational injury.

### iii. Plaintiff lacks any interest in the patent sufficient to confer standing.

Here, the Court finds that Plaintiff is in substantially the same situation as the plaintiff in *Larson*, since Vita-Herb has been barred by the terms of the General Release from pursuing any claim for co-ownership of the '370 Patent and cannot show any concrete financial interest in the outcome of a suit for corrected inventorship. Plaintiff's financial interest is "contingent on [it] obtaining relief that a federal court has no jurisdiction . . . to provide," *Larson*, 569 F.3d at 1327, since the Court has determined that Plaintiff bargained away its right to sue for co-ownership. Unlike the plaintiff in *Chou*, who had contractual financial incentives tied to her claim of inventorship, the Plaintiff has not shown that Vita-Herb would have any right to make money off of the '370 Patent.

#### 1. Baksh would not have a "common law right" to infringe the '370 Patent.

Plaintiff argues that it is "not at all like the plaintiff in Larson," since Vita-Herb retains "whatever inventorship rights accrue to Baksh if Baksh is found to be a co-inventor." Pl's Opp'n at 2. Plaintiff hangs its argument on the dubious proposition that a declaration of co-inventorship would confer upon Vita-Herb "at least a common law right . . . 'to make, use and

vend'" the portion of the '370 Patent for which Baksh is responsible. *Id.* at 3 (citing *Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24, 36 (1923)).

Plaintiff's sole authority for this rather extraordinary claim, in which it proposes that a co-inventor with no ownership rights will forever retain and even be able to assign the right to "make, use and vend" his own invention, and which would be an end-run around the well-established statutory rights of a patent owner to exclude others from profiting by its patent, *see* 35 U.S.C. § 271(a) ("whoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent"), is a ninety-year-old case that stands for no such thing. *Crown Die* distinguished between an inventor's common law right "himself to make, use or vend his own invention," which did not include a "right to exclude others," and the "government conferred" statutory patent right, which *did. See Crown Die*, 261 U.S. at 35.  Nowhere in *Crown Die* does the Court suggest that an inventor may continue to exercise his common law right to "make, use and vend" his invention after he has lost title to that patent and consequently been statutorily barred from infringing on it.  *See, e.g.*, *Homedics, Inc. v. Valley Forge Ins. Co., a Pennsylvania Corp.*, 315 F.3d 1135, 1142 (9th Cir. 2003) (noting that "a patent is a right to exclude").

Plaintiff provides no additional examples from the past ninety years of patent-related jurisprudence of an inventor retaining a permanent license to make, use, or sell his own invention when another party possesses the title to that patent, and certainly offers no example of an inventor then successfully assigning that perpetual right to a corporation that competes with the patent owner.   Accordingly, Plaintiff's argument is unpersuasive.

### 2. Vita-Herb would not have a "shop right" to use the '370 Patent.

At the hearing on this motion, Plaintiff raised for the first time the argument that Vita-Herb has a concrete financial interest in a declaration of Baksh's co-inventorship because it retains a "shop right" to use Baksh's portion of the '370 Patent.  Counsel for Defendant accurately observed that Plaintiff's new argument should have been included in Plaintiff's briefs, and Plaintiff in turn requested leave to file additional briefing on the issue, but the Court

1    can decide this issue without further briefing: Plaintiff Vita-Herb did not and could not have any
2    shop right to use Baksh's invention.

3          A shop right is "essentially an irrevocable, non-exclusive license that is acquired by an
4    employer under certain circumstances to practice the invention of his employee." *Mechmetals*
5    *Corp. v. Telex Computer Products, Inc.*, 709 F.2d 1287, 1291 (9th Cir. 1983).  It is an equitable
6    principle based on the premise that "where a servant, during his hours of employment, working
7    with his master's materials and appliances, conceives and perfects an invention for which he
8    obtains a patent, he must accord his master a non-exclusive right to practice the invention."
9    *United States v. Dubilier Condenser Corp.,* 289 U.S. 178, 188 (1933).  Citing *Francklyn v.*
10   *Guilford Packing Co.*, 695 F.2d 1158 (9th Cir. 1983), a case in which a fish processing company
11   was found to have a shop right to use and reproduce the patented clam harvesting machine
12   designed by its employee, Plaintiff argued that Vita-Herb has a financial interest in the outcome
13   of its co-inventorship claim because a declaration that Baksh co-invented the '370 Patent would
14   give Vita-Herb a shop right to use and sell his invention.

15         Plaintiff is mistaken.  In *Mechmetals Corp. v. Telex Computer Products, Inc.*, 709 F.2d
16   1287 (9th Cir. 1983), the Ninth Circuit reversed a district court's determination that a
17   manufacturing company, Mechmetals, had a shop right to use a patented magnetic tape design
18   partly invented by the corporate president of Mechmetals.  *Id.* at 1292.  The court discussed, at
19   length, why the equitable doctrine of the shop right did not apply to an "employer" whose
20   "employee" was president of the company:

21         . . . Glaeser was not an ordinary employee. He was president and chief executive
22         officer of Mechmetals. In practice, he exercised virtually unchecked control over
23         Mechmetals' corporate affairs. The normal situation in which a shop right is
24         created is where a "servant uses his master's time, facilities and materials." *See*
25         *Dubilier Condenser Corp.,* 289 U.S. at 188, 53 S.Ct. at 557. To label Glaeser a
26         "servant" of Mechmetals would ignore the true nature of his employment relation.
27         Equity will not compel such a characterization.

28

*Mechmetals*, 709 F.2d at 1292. Further, the court observed that "a businesslike, negotiated transaction" is "not the type of informal understanding between an employer and employee present in cases where the Supreme Court has deemed it necessary to imply an equitable shop right. *Id.*

Regarding the policy considerations at play in an analysis of shop rights, the court noted that there is a "presumption of exclusivity . . . accorded persons who properly secure protection for their inventions under the patent laws," and so the court-created shop right should be "confined to the type of situation for which it was created: where the inventor is an employee working at the employer's direction, and the invention is made possible by the employer's liberal, informal attitude toward on-the-job experimentation." *Id.*

Here, Plaintiff is in much the same position as Mechmetals Corporation. Baksh is the founder, president and chief executive officer of Vita-Herb. Baksh Decl. (Dkt. 50) ¶ 1. At oral arguments, Plaintiff's counsel also stated that Baksh controls at least 80% of Vita-Herb shares. While allegedly inventing a portion of the '370 Patent, he was never a "servant" of Vita-Herb, and there never existed an "informal understanding" between Baksh and his company regarding Vita-Herb's use of the invention. Indeed, to the extent that there was a "transaction" between Baksh and his company, it was exceedingly businesslike and formal and took the form of a "Patent Assignment" in which Baksh transferred "all my right, title and interest" to the '370 Patent to Vita-Herb. Pl's Statement of Uncontroverted Facts (Dkt. 49-2) ¶ 65. As in *Mechmetals*, the equitable doctrine of the shop right does not apply. Accordingly, Plaintiff cannot rely on the possibility of a Vita-Herb shop right to establish a financial interest in its claim for co-inventorship.

   **c. Disposition**

Because the Court finds that it cannot exercise subject matter jurisdiction over Plaintiff's remaining claim, it GRANTS Defendant's Motion for Judgment on the Pleadings.

**III. Motions for Summary Judgment**

Because the Court finds that it does not have subject matter jurisdiction over Plaintiff's remaining claim, it declines to consider the parties' respective motions for summary judgment and DENIES them as moot.

### IV. Conclusion

For the reasons outlined above, the Court GRANTS Defendant's Motion for Judgment on the Pleadings (Dkt. 52) and DISMISSES Plaintiff's claim. The parties' cross-motions for summary judgment (Dkts. 49, 53) are DENIED as moot.

DATED: March 20, 2013

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE